Baxter *v.* Ryerss.

[CAYUGA GENERAL TERM, June 7, 1852. *Selden*, *T. R. Strong* and *Johnson*, Justices.]

———————•◦•———————

BAXTER *vs.* RYERSS, adm'r, &c.

The assignee of covenants of warranty and for quiet enjoyment, who has been legally damnified by the ouster of his tenants or assignees, may maintain an action against the original grantor. But he must first make satisfaction upon his own covenant, to the persons evicted.

In an action by such assignee, against the grantor, on the covenants of warranty, &c. upon his producing the record of a judgment in ejectment, against his tenants, for the recovery of the land conveyed, and proving the payment by him of the costs of the suit, he is *prima facie* entitled to recover back the purchase money paid, interest upon it for six years, and the costs of the suit.

This is the measure, and the only measure, of the damages. In no event, unless there be a special covenant to that effect, can the annual value of the land, or the mesne profits recovered against the party, be resorted to, to fix the measure of damages.

In such an action, proof by the defendant that after the eviction of the plaintiff the latter had by a second action of ejectment recovered possession of the premises, and ever since enjoyed the same, under his original title, will not constitute a complete defense, or bar the plaintiff of his right of recovery upon the covenants in his deed.

---

Baxter *v.* Ryerss.

---

In such a case the restoration of the premises goes in mitigation of the damages, merely, and does not work a complete satisfaction.

Where a grantee of premises leases the same to third persons, who are subsequently evicted by a person claiming under a paramount title, the grantee's right of action against the grantor, upon the covenants of warranty and for quiet enjoyment, contained in his deed, depends entirely upon the question of his liability to respond to the persons evicted. If he has made satisfaction to them, without being under any legal *obligation* to do so, this will not give him a right of action against the grantor.

It is only upon a breach of his covenant to his lessees, and payment of damages consequent thereon, that the grantee has the right to go back and maintain an action upon a covenant in his deed.

Accordingly, where the lease under which the persons evicted held the premises was a lease or agreement for five years, not under seal, without any express covenant in it, or the terms *grant* or *demise*, or any word importing a covenant; *Held*, that moneys paid by the lessor to the lessees, upon their eviction, could not be recovered back in an action by him against the grantor.

MOTION by the defendant to set aside the report of a referee. The action was brought by Thomas Baxter, against Joseph W. Ryerss, administrator of John P. Ryerss, deceased, to recover damages for the breach of a covenant of warranty, contained in a deed of conveyance of certain lands in the county of Yates, executed by the said John P. Ryerss, in his lifetime, and several issues of fact having been joined upon the matters set forth in the declaration, the cause was referred to Daniel Morris, sole referee; before whom the cause was brought to a hearing in August, 1849. Upon such hearing, the counsel for the plaintiff introduced and read in evidence a deed, bearing date the 16th day of April, 1831, executed by John P. Ryerss to one Esek Wilber, for the consideration, as therein expressed, of sixteen hundred dollars, duly proved and recorded in the Yates county clerk's office, May 5th, 1831, conveying one hundred and nine and sixty-seven one hundredths acres of land, in Milo, Yates county, aforesaid, and containing covenants, of which the following is a copy, to wit: "And the said John P. Ryerss does hereby, for himself, his heirs, executors and administrators, covenant with the said party of the second part, his heirs and assigns, that he, the said John P. Ryerss, at the time of the ensealing and delivery of these presents, is seised

of an estate in fee simple, in the above granted and bargained premises, and has power to grant and convey the same in manner aforesaid; and that the said party of the second part, his heirs and assigns, shall peaceably and quietly hold and enjoy the same, and that the same are free from incumbrances, and that the said John P. Ryerss and his heirs, the said granted and bargained premises to the said party of the second part, his heirs and assigns, will warrant, and by these presents, forever defend." The plaintiff's counsel next produced, in evidence, a deed, dated November 3d, 1831, from Esek Wilber to Thomas Baxter, the plaintiff, for the consideration, as expressed therein, of $5033,45, duly proved and recorded in the same clerk's office, November 8th, 1831, conveying the premises aforesaid, together with other lands. The plaintiff's counsel next produced and read, in evidence, a lease, in the words following, to wit: "An article of agreement, made this first day of April, 1835, between Thomas Baxter, of the town of Milo, county of Yates, of the first part, and John C. Wheeler and George C. Wheeler, of the same place, of the second part, witnesseth: the party of the first part agrees to let to the parties of the second part the farm formerly owned by Esek Wilber, in said town, now occupied by Wm. Baxter, containing about two hundred and fifty acres, for the term of five years from the date of this lease, for the sum of two thousand two hundred and fifty dollars, in manner following, to wit: four hundred and fifty dollars on the first day of April next, four hundred and fifty dollars annually until the above mentioned sum is paid, and the parties of the second part agree to pay to the party of the first part the above sum as above stated, and to work the farm in a farmer-like manner, and not keep more than three fires from the wood on said farm, and not cut any green timber for fire wood if there should be dry enough for said three fires, and not to use any green timber except what is necessary for to keep in repair the fences on said farm, and keep and leave said farm and buildings in as good repair and condition in all respects as it now is, and to pay all taxes that may be assessed on said farm for the above term of years. In witness whereof," &c. This lease was thus indorsed: "In

addition to the within article of agreement, it is further stipu-
lated and agreed on the party of the first part that the said
parties of the second part have the right and privilege to reap
and store the crop of grain which they shall or may have in the
ground, on the within mentioned farm at the expiration of said
term; and on the party of the second part that the said party
of the first part have the right and privilege of keeping and
storing the grain which is now in the ground on said farm. And
it is particularly agreed on the said second party that they will
pull up the noxious weeds that shall spring up on the said farm,
at least once in each year, so as to leave it as clear of weeds as
it now is, but they are not bound to leave it any clearer than it
now is." This indorsement was signed by the parties and dated
the second day of April, 1835. The execution of the foregoing
lease and agreement was admitted on the part of the defendant,
and also that the premises mentioned in the lease embrace the
same premises described in the above mentioned deed from John
P. Ryerss to Esek Wilber. The plaintiff's counsel then offered,
in evidence, an exemplified copy of the record of a judgment re-
covered in the supreme court, in an action of ejectment, where
Herman H. Bogert was plaintiff, and John C. Wheeler and
George C. Wheeler were defendants, to recover possession of
certain premises, particularly described in the declaration in
that action. Judgment was in favor of the plaintiff for the
entire premises, and that he recover possession thereof; by
which judgment the plaintiff therein also recovered against the
defendants six cents damages, and the sum of $95,92, for his
costs and charges adjudged to him of increase; which damages,
costs and charges in the whole amounted to $95,98, and the
record thereof was signed and filed July 7th, 1837. To the in-
troduction of this judgment record, or the exemplified copy
thereof, in evidence, the defendant, by his counsel, objected, on
the ground of irrelevancy, and because John P. Ryerss was not,
nor was his personal representative, in any way a party to that
action, nor to the record, and that the defendant could not be
bound or have his rights determined by it. The objection was

Baxter *v.* Ryerss.

overruled by the referee, and an exception to the decision taken by the defendant's counsel, and the evidence was received.

The plaintiff here offered, in evidence, an exemplified copy of a writ of possession and *fieri facias*, issued to the sheriff of the county of Yates, upon the above mentioned judgment in ejectment, tested July 10th, 1837, by which writ said sheriff was commanded to deliver possession of said premises to the plaintiff in said judgment, and to levy of the goods, chattels, lands and tenements of the defendants therein, the sum of $95,98, being the damages and costs aforesaid, besides his fees, which said writ was returnable July 15th, then instant; on which last mentioned day the sheriff returned to said writ, by an indorsement in writing thereon, signed by him, that by virtue thereof he had delivered possession of the premises to the plaintiff in said judgment, and had caused to be made of the goods, chattels, lands and tenements of the defendants, named in said writ, the said damages and costs as he was therein commanded. Filed January 17th, 1838. To this evidence the defendant objected, on the same grounds as he before objected to the evidence of said recovery in ejectment. The objection was overruled by the referee, and the evidence received; to which decision the defendant excepted. The plaintiff then offered, in evidence, an exemplified copy of suggestions for mesne profits subjoined to said judgment record; also, an exemplified copy of the circuit roll and postea of proceedings upon such suggestion for mesne profits, and an exemplified copy of the minutes of the trial at the circuit of the issue on such circuit roll; to each of which, respectively, the defendant objected, on the ground of irrelevancy; that there was no allegation in the declaration pointing to or authorizing the introduction of any part of such proof, and as relating to transactions between other parties, by which the defendant was not bound. The referee overruled the objection as to each item of the proof so offered, respectively, and received all the evidence so offered; to which decision the defendant excepted. From which postea and minutes of trial it appeared that the plaintiff in said ejectment suit recovered a verdict against the defendants therein for mesne profits, for the sum of $343.

The plaintiff then called Justus S. Glover, as a witness, who testified that he was attorney for Bogert in the ejectment suit, and continued the proceedings for the recovery of mesne profits; that there was no judgment ever entered on this verdict. The damages were paid by Mr. Baxter. To this testimony, that the damages were paid by Mr. Baxter, the defendant objected; the objection was overruled by the referee; to which decision the defendant excepted. The evidence was received. The witness testified that the amount of costs in that proceeding of the plaintiff against the Wheelers was $124; they were liquidated at that sum. Baxter paid the costs on the day the bill was noticed for taxation, the 26th July, 1839. He paid also the amount of the verdict, being $343, and interest on the same from the time of its rendition, being $16,19. All the testimony by this witness in respect to the payment of mesne profits, damages, costs and interest, or either of them, was. objected to in time by the defendant's counsel; the objection was overruled, and the evidence received, subject to the objection; its admissibility to be determined by the referee in deciding the cause; to which decision the defendant excepted.

John C. Wheeler was sworn as a witness for the plaintiff, and testified that he was one of the defendants in the above mentioned ejectment suit, and was also named in the said lease; that he was acquainted with John P. Ryerss, after the ejectment suit was commenced, and before trial; that he saw him in February or March, in the year following the commencement of the ejectment suit, and had a conversation with him about that suit; that Ryerss told him to go on and get all the witnesses he could hear of, and that he would go off; that there was one deed which wanted proving; he would go and find the witnesses and get the deed proved, and get the other deed which was missing if he could; and the understanding was that he would be back at the time of the trial. But that he did not attend the trial. His counsel, however, was present. The witness further testified, that a week or ten days after he and his brother were evicted, they took a lease of the premises from Bogert, and entered into possession; that they did it to secure their grain.

The plaintiff having rested, the defendant, by his counsel, offered to read, in evidence, an exemplified copy of a judgment record, in an action of ejectment, brought by John P. Ryerss and Thomas Baxter and others, against George C. Wheeler, to recover the possession of the same premises mentioned and described in the deed from John P. Ryerss to Esek Wilber. From which judgment record it appeared that such action of ejectment was commenced by the plaintiffs therein in the supreme court, in the term of May, 1838; that the defendant, George C. Wheeler, appeared in the same action, and pleaded to the declaration therein, taking issue thereon; that after issue had been so joined, John P. Ryerss, one of the plaintiffs, died; and that thereupon, in a proceeding by scire facias, Gozen Adrian Ryerss, Joseph W. Ryerss, Thomas W. Smith and Elizabeth W. Smith, his wife, were in due form of law substituted in the place of the said John P. Ryerss, as plaintiffs in said action; and that the said issue thereupon proceeded, in due form of law, to trial and judgment with the names of the said Gozen Adrian Ryerss and others, substituted in the place of the said John P. Ryerss, deceased, and as having succeeded to his title in and to the premises mentioned and described in such action; that the judgment in such action was, amongst other things, that the plaintiffs therein should recover against the said George C. Wheeler, the possession of the premises described in said last mentioned record of judgment, with damages and costs, in all amounting to five hundred and forty-eight dollars and sixty-seven cents. By the same judgment record, it further appeared, that such judgment of the supreme court was afterwards reviewed in the court for the correction of errors, in July, 1841, upon the return to a writ of error prosecuted by and on behalf of the said George C. Wheeler, to reverse such judgment; and that such judgment of the supreme court was in due form of law in all things, affirmed; and the proceedings and judgment were thereupon remitted to the supreme court, and judgment final, and for execution, entered thereon in the supreme court, and the record of such judgment duly filed, on the 31st day of January, 1843. The plaintiff, by his counsel, objected to reading this certified

copy record in evidence; which objection was overruled by the referee, and said copy record was read, in evidence, by the defendant's counsel, to which the plaintiff excepted. Henry Welles was then called as a witness for the defendant, and testified that after the recovery by Herman H. Bogert in his action of ejectment against John C. Wheeler and George C. Wheeler, he, the witness, was directed by John P. Ryerss to bring an action of ejectment against whoever was in possession of the premises in question; that he consulted Baxter about his being a party to the suit, supposing it necessary for him to be a party, and he agreed his name should be used; that he represented to him, at the same time, that if a recovery was had, it would be for his benefit. The suit was accordingly commenced in the names of John P. Ryerss and others, with Thomas Baxter as plaintiffs. During the pendency of this suit, John P. Ryerss died, and the suit was revived by his heirs. During the progress of the suit Baxter frequently made inquiries about it; that after the affirmance of the judgment in the court of errors, no writ of possession was executed, for the reason that it was understood, at the time, that Baxter was then in possession; that after the recovery of the verdict by Herman H. Bogert, in his ejectment suit, and before judgment was perfected therein, and in time to take steps to prevent executions, the witness had a conversation with one or both of the Wheelers, on the subject of applying for a new trial; that one or more of those conversations was in time to obtain a new trial, and retain the possession of the premises. That they (the Wheelers) seemed to hesitate about the new trial. They did not object; they seemed undecided, and wanted to act in accordance with the wishes of their landlord; that on the trial of Bogert's ejectment suit against the Wheelers, Ryerss was not there; he had not returned, and his title was not introduced. All the defense Ryerss made was adverse possession, in which he failed. After the execution of the writ of possession in the Bogert ejectment suit, an application was made to the court for a new trial in that suit, in the names of the Wheelers. They consented that Ryerss might use their names, for that purpose; but the motion was denied.

Witnesses were examined on the part of the plaintiff in relation to the annual value of the premises. The evidence being closed, the cause was submitted to the referee for decision; the defendant's counsel insisting and claiming before the referee, (1.) That the fact that the plaintiff recovered possession of the premises after the eviction (if any) by Bogert, and entered, and still held the same under the Ryerss and Wilber title, should estop him, the plaintiff, from treating the title as having at any time failed; the suit being brought in the plaintiff's name, with others, for his benefit; and if not absolutely estopped, yet he should thereby be deemed to have waived his right to this action. (2.) That the plaintiff could not claim to recover for any thing but the consideration money in the deed to Wilber, because the declaration was not adapted to any other case. That he had not assigned as a breach the temporary deprivation of possession, but proceeded on a total loss of the premises by means of Bogert's ejectment suit, and the eviction of his tenants thereby. And that he could not claim the consideration money of that deed, which, with the costs, &c. is the usual measure of damages in such cases, because he had re-entered, and had ever since held, and still holds possession under the same title, to wit, the Ryerss and Wilber deeds, and in hostility to Bogert's title. (3.) That the plaintiff could not recover the costs which the Wheelers were compelled to pay to Bogert, because he was not legally liable to pay them to the Wheelers; and he paid them in his own wrong. That the Wheelers were the only ones (if any) who could recover those costs of Ryerss. (4.) That if any thing more than nominal damages could be recovered, the amount of those costs, with interest, and the expenses of defending Bogert's suit, should be the extent of the recovery, being all that was specifically declared for. (5.) That the recovery by Bogert, in his ejectment suit, was not conclusive upon the question of title, as between these parties; but that the recovery in the Ryerss and Baxter ejectment concluded them. (6.) That the attornment by the Wheelers to Bogert, with consent of Baxter, prevented Ryerss from defending his title, and thus

keeping and performing his covenants.   The referee reported in favor of the plaintiff for $1734,88.

*James Taylor*, for the plaintiff.   I. The plea of *non est factum*, which is pleaded to both counts of the declaration, puts in issue only the execution of the deed to Wilber, and not the breach of the covenants on which we rely, or any matter of defense.   It admits the breaches assigned, and every other material allegation in the declaration.   (*Cooper* v. *Watson*, 10 *Wend.* 205, *and cases there cited.   Norman* v. *Wells*, 17 *Id.* 137.)   That deed was read in evidence without objection, as was also the deed from Wilber to the plaintiff.   II. The second plea to the said first and second counts, puts in issue, 1st, the allegation of a paramount title to the premises in Bogert ; 2d, the allegation that John P. Ryerss had notice in time to defend the ejectment suit brought against the Wheelers ; and 3d, the allegation that the recovery in that action was in consequence of the failure of Ryerss to show title on that trial in him.   Each of these allegations thus denied is fully sustained by the proofs appearing in the case ; the first by the production of the record showing a recovery in the ejectment suit ; the second and third are proved by John C. Wheeler, and other evidence in the case.   III. The special matter set forth in the notice, if true, formed no defense to the action.   (1.) The first ground taken in the notice is that Ryerss requested the plaintiff and his tenants to move for a new trial, or permit him to do so, and that they refused.   To this we answer by inquiring, what right had he to make the request ?  were we bound to subject ourselves to the vexation and expense of another trial ?   And besides, had we improperly refused to allow him to use the names of the Wheelers, on a proper application, the court, beyond doubt, would have allowed him alone or with them, further to defend the action.   And another and full answer is that he not only had notice of the pendency of the suit, but that he did in fact appear by his counsel and defend.   The record therefore is conclusive against him. (*See Cooper* v. *Watson*, 10 *Wend.* 205, *before cited.*)   (2.) The second ground taken in the notice is that on the 12th of July,

Baxter *v.* Ryerss.

1837, the Wheelers, by the direction of the plaintiff, went into possession of the premises, under Bogert, and continued that possession until the first of May, 1838, when they surrendered to Bogert. This is not proved, and if it were, what defense is that to this action, or any part of it? Having been evicted, had they not a right to attorn to Bogert? (3.) The next position taken in the notice is that in January, 1843, Ryerss regained the possession of the premises, and that Baxter has ever since enjoyed them. This is proper evidence, in mitigation of damages. The fee having been restored to the plaintiff, his measure of damages is changed to what it would have been had he lost the possession merely. IV. Having shown a right to recover, the only remaining question relates to the amount; and we claim that the referee in this case has adopted substantially the correct rule of damages. When the entire estate purchased has been lost by the eviction, the consideration money, and interest for six years, together with the costs and reasonable counsel fees, will be recovered. (*Bennet* v. *Jenkins,* 13 *John.* 50, *and cases there cited.*) As interest is given to countervail the claim for mesne profits, it should be computed only for the time for which mesne profits are recoverable—that is, from the time the premises have been occupied, not exceeding six years. When, however, as in this case, the fee has been restored to us, the measure of damages has in part been changed. We can now recover only for the loss of the possession. That loss is measured either by claiming the interest of the purchase money for the time we have been deprived of the possession, not exceeding six years, or by proof of the annual value of the premises, (excluding the value of permanent improvements,) for the same time. To which will be added, as when the entire estate has been lost, the taxed costs of the ejectment, the sheriff's fees on the writ of possession, the costs of the defense, if any have been incurred, and reasonable counsel fees. (*Rickert* v. *Snyder,* 9 *Wend.* 421, 423. *Cooper* v. *Watson,* 10 *Id.* 202. 4 *Kent's Com.* 475, 476, 477, 4*th ed.*) On the trial it was objected, (1.) That for the time for which the Wheelers were liable for mesne profits the defendant was not responsible to the plaintiff, because by the terms of the lease there

were no covenants on the part of Baxter for quiet enjoyment. That although the Wheelers were evicted they had no claim on their lessor. And if he paid them he paid them in his own wrong. The objection is founded on the language of the statute. (1 *R. S.* 738.) We submit that the statute in question does not apply to an instrument not under seal; from the whole article we think it is plain that the legislature intended to embrace those instruments only which required a seal, such as would convey a fee simple, or at least a freehold estate. As evidence of this, the article is entitled " Of Alienations by Deed." The section referred to (140) contains the word covenant : " No covenant shall be implied in any conveyance of real estate." Now the words deed and covenant can be legally used only in reference to an instrument, under seal. The lease to the Wheelers was not under seal, and therefore is to be construed independently of the statute in question. On the trial it was claimed that in the case of *Kinney* v. *Watts,* (14 *Wend.* 38,) the point is decided against us. But in that case the action was covenant, founded on a sealed lease for a term of ten years. And besides, the reason given by the court for the passage of the act favors our construction of it. Sutherland, J. says : At common law, certain words when used in a conveyance of real estate, of themselves import and make a covenant in law, as *dedi, concessi, demisi,* &c.; and it must have been this doctrine of the common law which this statute was intended to abrogate. Now these words *dedi,* &c. did not import a covenant except when found in a deed. We conclude, therefore, that this statute does not touch a lease not under seal. We are aware that in *Tone* v. *Brace,* (8 *Paige,* 597,) the case of *Kinney* v. *Watts* is referred to, and it was claimed that the doctrine of the latter case was applied by the chancellor to an unsealed lease. On looking at that case the court will see that the chancellor expressly declares himself in favor of the views for which we contend, had it not been for the decision in the 14 *Wend.* and then adds that in deciding the question before him, it was not necessary to inquire whether the supreme court had adopted the proper construction of the statute, and proceeds to decide it on other grounds. The chancellor,

Baxter *v.* Ryerss.

therefore, is very far from indorsing the doctrine of that case; on the contrary, he gives us the benefit of his opinion fully, if the court is satisfied that our exposition of the statute is a correct one. Again, we submit that on looking at the lease as a whole there will be found in it what is equivalent to a promise on the part of the lessor that his tenants should quietly enjoy the premises from year to year during the term. But if our views of the statute be sound, we need not look for an express promise; the law certainly will imply one on the part of Baxter to refund the rent paid him by the Wheelers for the period for which they were responsible for mesne profits to Bogert. (*Norton* v. *Coons*, 3 *Denio*, 134, *and cases there cited.*) Besides; what right has the defendant to raise this objection? When Ryerss conveyed to Wilber he covenanted that he and his assigns should quietly enjoy the premises. That covenant has been transferred to us. In that covenant he speaks and repeats the assurance to Baxter and his assigns. So far as Ryerss is concerned we submit it is immaterial whether Baxter in person occupies the premises, or his tenants. As to him the Wheelers may be regarded as the mere servants or laborers of Baxter. But if in all this we are wrong the objection can only extend to the time the Wheelers occupied the premises; that is, from the 1st of April, 1835, to the 15th of July, 1837, two years three and a half months; from the 15th of July, 1837, to the 1st of February, 1843, five years six and a half months, there can be no doubt of our right to recover. (2.) It is also objected that the fact that the plaintiff with others recovered the premises after eviction and still holds them, should estop him from treating the title as having at any time failed. It is difficult to see the force of this objection. Here is a covenant broken confessedly on the 15th of July, 1837, and the plaintiff kept out of possession of the premises until the 1st of February, 1843. How has the cause of action thus occasioned been discharged? By payment? By accord and satisfaction? By release? A suit has indeed been brought in which his name was allowed to be used as one of the plaintiffs, at the solicitation of Ryerss, with the express understanding that his rights were in no wise to be affected. Why for

Baxter *v.* Ryerss.

this he should lose his claim, or be estopped from asserting it, we cannot discover. . See *Bennett* v. *Irwin,* (3 *John.* 364,) where the court decided that a reconveyance of the land to the grantor after covenant broken was not a release or extinguishment of the covenants. (3.) It is also objected that in the declaration the plaintiff has sought to recover as for a total failure of title; and that on that ground alone he must recover, or not at all. Possession is a part of the title. Without it no title is perfect. So long as it is mathematically true that the whole includes all of its parts there is nothing in this objection.

*C. G. Judd,* for the defendant. I. The referee erred in over-ruling the several points and objections made by the defendant on the hearing, and particularly his report is erroneous, because: II. The lease from Baxter to Wheelers containing no covenant of warranty or for quiet enjoyment, Baxter was not under legal obligation to defend their possession, or to pay any part of the recovery of Bogert against them, or of the expenses of endeavoring to defend the ejectment suit against them. There is no express covenant on the part of Baxter of any kind, in that case; and no covenant can be implied. (1 *R. S.* 739. 2 *Id.* 22, § 140. *Kinney* v. *Watts,* 14 *Wend.* 38.) The lease contains no words which, independent of the statute, would imply any covenant of warranty, or for quiet enjoyment. The words "agrees to let" never have received such construction. (*Barney* v. *Keith,* 4 *Wend.* 502. *Grannis* v. *Clark,* 8 *Cowen,* 36. *Kane* v. *Sanger,* 14 *John.* 89. *Bickford* v. *Page,* 2 *Mass. Rep.* 460.) The plaintiff therefore paid Bogert's recovery and the expenses of defending the ejectment suit voluntarily, and without any legal liability thereto, and cannot recover for them in this action. For the same reason the plaintiff ought not to recover for the value of the premises during any part of the term covered by that lease. (*Boots* v. *Starr,* 1 *Conn. Rep.* 244.) III. The referee erred by receiving in evidence the judgment record in ejectment between H. H. Bogert, plaintiff, and John C. and George C. Wheeler, defendants, for the reasons stated in the second point above, and also because it was wholly irrelevant, and John P.

Ryerss was not, nor was his personal representative, in any way a party or privy to that record, and could not be bound by it. (*Ryerss* v. *Rippey*, 25 *Wend.* 432. *Wheeler* v. *Ryerss*, 4 *Hill*, 466. 2 *R. S.* 235, § 36.) IV. The referee, for like reasons, erred by receiving in evidence the execution, suggestions for mesne profits, circuit roll, postea and minutes of trial in same suit. V. Under his declaration in this action the plaintiff would not in any event be entitled to recover for anything but the consideration in the deed to Wilbur, and interest. (*Kinney* v. *Watts*, 14 *Wend.* 40.) The plaintiff has not assigned as a breach the temporary deprivation of possession, but proceeds for a total loss of the premises. He cannot, however, recover that consideration money, which, with interest and costs, is the usual measure of damages, because he has re-entered under the Ryerss title, and in hostility to Bogert's, and has ever since held possession accordingly. VI. The plaintiff having recovered possession of the premises under Ryerss' title, after the eviction by Bogert, and continuing to hold under that title, is estopped thereby from treating the title as having ever failed, or at least has thereby waived all right to maintain this action. VII. If anything more than nominal damages can be recovered, the annual value of the premises could form no part of such recovery, it not being specifically claimed in the declaration.

*By the Court,* JOHNSON, J. The lessees of the plaintiff were evicted and ousted from the possession of the premises, in an action of ejectment against them after notice of the pendency of the action, and a request to defend, made to the original grantor of the land then in suit. Ryerss, the intestate, conveyed with covenants of warranty and for quiet enjoyment, and his grantee conveyed to the plaintiff with like covenants. If, therefore, the plaintiff has been legally damnified by the ouster of his tenants or assignees, he may maintain the action. But before he can maintain it he must make satisfaction upon his own covenant to the person evicted. For no person can maintain an action to recover damages who has sustained none. (*Withy* v. *Mumford*, 5 *Cowen*, 137. 4 *Kent*, 472, *n. b, and cases there cited.*)

Assuming for the present that the plaintiff's covenant to his lessees has been broken, it seems clear that when he had rested his case he had made out a complete cause of action. The record was conclusive as to the eviction, and he proved the payment of the costs of the suit. Prima facie, therefore, he was entitled to recover back the purchase money paid, interest upon it for six years, and the costs of the suit. This was the measure, and the only measure of the damages.

The defendant then on his part proved that by a subsequent suit the land had been recovered from the plaintiffs in the first suit, and restored to the plaintiff here, who had ever since possessed and enjoyed the same under his original title. The defendant's counsel contends that this is a complete and perfect defense to the action. That the plaintiff having recovered possession under the Ryerss title, and continuing to hold under that, is estopped from treating the title as having in any manner failed, and is barred of his right of action upon the covenants in his deed. But this consequence I apprehend would scarcely follow. Notwithstanding the Ryerss title was ultimately vindicated and established as the paramount title, in another suit in which Ryerss and the plaintiff were plaintiffs, it is nevertheless true that the plaintiffs' lessees were in a former action against them legally evicted, and a title hostile to the Ryerss title established as the paramount title. The covenants in the deed were then broken and the right of action accrued. That judgment must be regarded as conclusive as to the breach of the covenants.

Did the ultimate establishment of the Ryerss title, and the restoration of the possession to the plaintiff, work a complete satisfaction? I think not. The plaintiff could no longer recover the purchase money, because the land granted was restored, and he was holding under the grant. But that did not satisfy the costs of the suit, nor the interest upon the purchase money for the time the plaintiff, or those to whom he was compelled to restore, was deprived of the enjoyment of the land by the judgment; which would have been part of the recovery in case there had been no restoration of the land. I think in such a case the

restoration goes in mitigation of the damages merely, and does not work a complete satisfaction.

But the damages which the law gives, in addition to the purchase money, are the costs of the suit and interest upon the purchase money for a limited time. In no event, unless there be a special covenant to that effect, can the annual value of the land, or the mesne profits recovered against the party, be resorted to, to fix the measure of damages. The party is still confined to the same species of damages as though the recovery were for the whole purchase money.

It was well said by Sutherland, justice, in *Kinney* v. *Watts*, (14 *Wend.* 211,) that "if a purchaser takes the general covenants of warranty and quiet enjoyment, he has no right to complain that the law does not afford him full compensation for the loss and injury which he has sustained by eviction. If he resorts to an action upon this covenant he must take the rule of damages which the law has established for the breach of it." It follows, in any view of the case, that the recovery here was wrong.

From the report of the referee it appears that he allowed to the plaintiff $150 per year as the annual value of the premises with interest thereon, as I infer from the amount, for the whole time from the eviction to the restoration. The plaintiff if he was entitled to recover at all, could only recover the costs of the suit by which he was evicted, and the interest upon the purchase money mentioned in Ryerss' deed to Wilber, for six years. The interest is the legal countervail to the claim for mesne profits. The law has fixed that as the measure of damages, beyond the purchase money and costs, in all actions of this character.

But there is still a more serious, and perhaps more difficult, question to dispose of, which goes to the foundation of the action. Has the plaintiff been legally damnified? Was he under any obligation to make satisfaction to the persons evicted? If he was not, no matter what sums he may have paid, or what recompense he may have made to his tenants, the law affords him no redress in this action. He will be regarded as a mere

volunteer in the matter, paying gratuitously. The plaintiff not being the party actually evicted, his right of action depended entirely upon the question of his liability to respond to the persons evicted. It is shown that he paid the costs of the suit against them and also the amount recovered as mesne profits. But this is nothing, unless he was under a legal liability to pay. The lease from the plaintiff, under which the persons evicted held, at the time of such eviction, was a lease or agreement for five years, in writing, not under seal. There is no express covenant in it; nor does it contain either the term *grant* or *demise*. At common law these terms grant and demise, in a lease for years, imported a general covenant of warranty of title in the lessor, or the right to make a valid lease, and for quiet enjoyment. (*Grannis* v. *Clark*, 8 *Cowen*, 36.) But since the revised statutes no covenant can be implied, in any conveyance of real estate. (1 *R. S.* 738, § 140.) This has been held to apply to leases for years. (*Kinney* v. *Watts*, 14 *Wend.* 38.) Chancellor Walworth in *Tone* v. *Brace*, (8 *Paige*, 597,) remarks that but for the authority of *Kinney* v. *Watts* he should have been of opinion that the statute did not apply to leases for years, which were mere chattel interests. But I am of opinion that the supreme court were clearly right; and that leases of this description are directly within the letter and spirit of section 140. By 1 *R. S.* 762, § 36, the term real estate is declared to embrace all chattels real except leases for a term not exceeding three years. And by 2 *R. S.* 186, § 6, no estate or interest in lands, other than leases for a term not exceeding one year, can be created unless by act or operation of law, or by deed, or *conveyance in writing* subscribed by the party creating the same. The conveyance in this section mentioned need not be under seal. It is sufficient that it is in writing and subscribed by the party creating the estate. The statute therefore applies to all leases in writing for a term exceeding three years, whether under seal or not.

But independent of the statute there are no words in this lease which have ever been held to import a covenant. It was never held that a *mere* sale or lease imported a warranty of title in the

Baxter *v.* Ryerss.

grantor or lessor of real estate, as in the case of personal property. But certain words in the grant or lease at common law were held to amount to covenants, and to constitute a general undertaking to warrant. In the lease before us there is no covenant that the plaintiff had any right to lease, or that the lessee should quietly hold and enjoy. And I think none would have been implied, at common law. I do not see therefore why the plaintiff does not stand precisely in the same situation that he would, had he conveyed the entire estate by a mere quit-claim or deed of bargain and sale, so far as this action upon the covenants in the deed is concerned. In such a case it could not be pretended that the plaintiff could maintain this action. Not being liable in any way to his grantee, he would be in no wise injured by his eviction, in contemplation of law. Voluntarily stepping in, and paying the recovery would give him no claim whatever. So here, the plaintiff was under no legal obligation to respond to his lessees, and it is only upon a breach of his covenant to them, and payment of damages consequent thereon, that he has the right to go back and maintain this action of covenant upon any covenant in a prior conveyance running with the land.

Whether the lessees of the plaintiff, who were evicted, were assignees of the covenant of warranty and quiet enjoyment in Ryerss' deed, so as to have enabled them to maintain an action for their breach, and if so what damages they would be entitled to recover, are questions which need not now be considered. It is sufficient here that there was no covenant to be broken between the plaintiff and his lessees, and that he was in no way accountable to them by reason of the eviction; consequently the law gives him no right of action upon the covenant in Ryerss' deed.

The report of the referee must therefore be set aside.

[CAYUGA GENERAL TERM, June 7, 1852.  *Selden, T. R. Strong* and *Johnson,* Justices.]