## BUFFALO SUPERIOR COURT.

### WILLIAM J. MACK agt. THADDEUS D. PATCHIN.

When a lease of lands for a term of years reserving rent, is made by *any words* sufficient for that purpose, the rent and the enjoyment of the term being the essence of the agreement, the law, unless the contrary is expressed, implies from the *act* of letting, and not from any magic in a word, a contract that the lessee shall enjoy the term; and from the *act* of taking that the lessee will pay the rent.

The words "grant and demise," are not essential. They do not *per se* import a covenant. The only word which *per se* in a conveyance of lands imports a covenant for title, is the verb "*do*," give.

The implied covenant for quiet enjoyment is sometimes limited to the estate of the lessor. This is rather a rule of evidence than a principle of law. There is no such limitation when the estate of the lessor is a fee incumbered by mortgage.

The measure of damages upon breach of covenant for title when there is no fraud is the money which has been paid. But when the covenantor becomes an actor in ousting his grantee, the measure of damages in an action upon the covenant 'is the value of the estate which he was instrumental in taking from his grantee.

P "let" to M a certain lot, warehouse, &c., for the term of six years, at a certain yearly rent. The demised premises at the time of the letting were incumbered by mortgage, which was soon after foreclosed. P and M were made parties. Under the usual judgment of sale and foreclosure, the premises were sold and conveyed to P and one D, who put M out by a writ of assistance. The premises were worth a larger rent than that reserved in the lease.

*Held,* that there was an implied covenant for quiet enjoyment. That the measure of damages under the circumstances, for its breach, was the value of the unexpired term (*Baxter agt. Ryers, 13 Barb. 267, not concurred in*).

*December General Term*, 1864.

*Present,* MASTEN, VERPLANK *and* CLINTON, *Justices.*

THIS was an action to recover damages for the breach of covenant for quiet enjoyment, in a lease for a term of years. It was tried before MASTEN, Justice, and a jury. The jury rendered a verdict for the plaintiff for nineteen hundred and forty-one dollars. The general term ordered judgment for the plaintiff upon the verdict. The facts of the case and the questions raised by the exceptions taken at the trial, are stated in the opinion of the court.

J. A. ALLEN and S. S. ROGERS, *for plaintiff.*

WM. DORSHEIMER, *for defendant.*

By the court, MASTEN, J. This case comes before us on exceptions taken upon the trial, and ordered to be heard in the first instance at the general term. . A brief statement of the facts will enable us to understand and consider the exceptions. The defendant being seized in fee of a certain lot of land with a brick warehouse thereon, and a dock in front thereof, situate in the .city of Buffalo, let them to the plaintiff on the first day of January, 1861, by lease in writing bearing date that day, and signed and sealed by both parties, for the term of six years, at a specified yearly rent to be paid by the plaintiff quarter yearly. The words of the lease as far as it is important to state them, are : " This agreement made the first day of January, A. D., 1861, between Thaddeus D. Patchin of the city of Buffalo, of the first part, and William J. Mack of the same place, of the second part, witnesseth : that the said party of the first part hath agreed to let, and hereby doth let, and the said party of the second part hath agreed to take, and hereby doth take those certain premises situate in the city of Buffalo, and *owned* by the party of the first part, viz. " (describing the premises) : " for the term of six years, to commence on the first day of January, 1861,

and to end on the first day of January, 1867." The plaintiff entered under this lease. The lease contained no agreements on the part of the defendant, except what may be contained in or implied from what is above stated. It contained a covenant on the part of the lessee to pay the rent. At the time of the execution of the lease, the premises were incumbered by mortgage held by the Buffalo Trust Company. That company in December, 1861, commenced an action to foreclose the mortgage, and made the said Thaddeus D. Patchin and the said Wm. J. Mack, parties defendants. The usual judgment of sale and foreclosure was entered, and the said demised premises were sold pursuant to such judgment on the 20th day of June, 1862, to the said Thaddeus D. Patchin and one William Dorsheimer, and the usual conveyance was executed to them. The purchase at such sale was made by said Patchin and Dorsheimer, pursuant to a previous arrangement between themselves. On the 18th day of October, 1862, the said Patchin and Dorsheimer presented their petition to the court at a special term thereof, signed by both of them, setting forth the proceedings, judgment, sale and conveyance to them in the said foreclosure action; that the said Wm. J. Mack was in the possession of the premises, and had, upon their demand, refused to deliver it up to them, and prayed for the writ of assistance to put him out. The court made an order that the said Mack show cause why the writ should not issue. He showed cause, and relied upon the said lease to him. On the 11th day of December, 1862, the court granted the writ of assistance. The writ was issued and placed in the hands of the sheriff for execution, who by virtue of it demanded the possession of Mack. The judgment in the action of foreclosure contained the usual clause that the purchaser at the sale should be let into the possession, and that the parties to the action in the possession of the premises, should, upon the demand of the purchaser and the production of his deed, deliver

up the possession to him. While the writ of assistance was in the sheriff's hands for execution, and on the 10th day of February, 1863, an arrangement was made between Mack and Patchin and Dorsheimer, that Mack should remain in the possession of the premises until the first day of May, 1863, paying rent at the rate reserved in the lease between Patchin and Mack, and should then yield up the possession. It also appeared that Mack complained of Patchin's acts, and claimed damages, and that it was agreed that the said last mentioned arrangement should not prejudice any claim he might have against Patchin. It was also shown that the demised premises were worth a larger rent than that reserved in the lease. The questions presented by the exceptions are :

1st. Does the lease contain a contract, express or implied, that the lessee should quietly enjoy the premises for the term mentioned in the lease ? Upon the argument, the defendant's counsel said that the words "grant and demise," by some reason not now well understood, import a covenant in leases for quiet enjoyment, but contended that no other words did. There are dicta in judicial opinions to the same effect. *Coke's Institutes* are usually referred to in support of them. They would not, in my opinion, have been made if my Lord Coke's admonition had been observed. According to the writers upon the ancient law, there is but one word which in and of itself implies a covenant, whenever or wherever used in the conveyance of an estate in lands, and that is the verb "*do*," give. According to my Lord Coke, a man may convey in fee without warranty. " A man seized of land in fee, has divers charters, deeds and evidences, and maketh a feoffment in fee, either without warrantie, or with warrantie only against him and his heirs; the purchaser shall have all the charters, deeds, evidences, as incident to the lands, *et ratione terræ*, to the end he may the better defend the land himself, having no warrantie to recover in value, for the evidences are, as it

were, the sinews of the land, and the feoffor not being bound to warrantie, hath no use of them. But if the feoffor be bound to warrantie, so that he is bound to render in value, then is the defence of the title at his peril, and, therefore, the feoffee in that case shall have no deeds that comprehend warrantie, whereof the feoffor may take advantage. Also, he shall have such charters as may serve him to deraigne the warrantie paramount. Also, he shall have all deeds and evidences which are materiall for the maintenance of the title of the land, but other evidences which concerne the possession and not the title of the land, the feoffee shall have them " (6 a).

In a feoffment in fee, warranty was implied by the ancient law when it was a pure gift, " donatio," or when homage ancestral was imposed. It seems singular at this day, as has been remarked by Sir MARTIN WRIGHT and by Chancellor KENT, that warranty should be attached by law to a fee which was a pure gift, and not to a fee created for a valuable consideration (Frost agt. Raymond, 2 Caine's R. 192). The word by which the donatio or gift was made was " do " or " dedi," and hence the warranty which the law attached to the donatio or gift, became attached to the word of art by which it was made, so that it came to be held that that word whenever used in any conveyance of real estate, implied warranty (Coke, 9 a, 384 a). By the common law, an estate of freehold or inheritance passed by livery of seisin. A lease for years being a chattel real, did not lie in livery, but in grant or contract. Lord COKE says : " Words to make a lease be, demise, grant, to fearme let, be taken, and whatsoever word amounteth to a grant may serve to make a lease. In the King's case, this word committo doth amount sometime to a grant, and by that word also he may make a lease, and, therefore, a fortiori, a common person by that word may doe the same " (45 b). " And here of necessitie, you must distinguish first between a warrantie annexed to a freehold or inheritance, and a

warranty annexed to a chattel real, for there grant, demise, *and the like*, doe make a warrantie " (384 *a*).

In *Bacon's Abridgement*, it is laid down " that whenever words are sufficient to explain the intent of the parties, that the one shall divest himself of the possession, and the other come into it for such a determinate time, such words, whether they run in the form of a license, covenant or agreement, are of themselves sufficient, and will in construction of law amount to a lease for' years, as effectually as if the most proper and pertinent words had been used for that purpose." (*Title, leases and term of years, K.*) *Hargrave and Butler* in their notes to *Coke's Institutes* (*note* 332), say : " A lease for years is a contract between lessor and lessee for the possession and profits of land on the one side, and a recompense or other increase, on the other. * * * The words 'yielding, and paying,' &c., were construed a covenant in favor of the lord, which enabled him' to recover his rent by an action ; and the words 'grant, demise,' &c., were construed a covenant in favor of the tenant, which enabled him to recover damages as a recompense for the possession lost. * * * In leases for years rendering rent, warranty, considering it to import a covenant for the quiet enjoyment of the term, is of the essence itself of the lease, but the lease being originally founded on contract, any of its terms may be varied by the parties themselves at their pleasure, and is in fact considered as varied *pro tanto* by the insertion of any express covenant."

From all this, I infer the ancient law to be that when a lease of lands for a term of years, reserving rent, is made by any words sufficient for that purpose, the rent and enjoyment of the term being the essence of the agreement, the law, unless the contrary is expressed, on the one hand implies from the act of letting, and not from any magic in a word, a covenant or promise that the lessee shall enjoy the term, and on the other hand, from the act of taking, that the lessee will pay the rent. And so is the law at the

present day. It is so generally understood to be, and hence the informality in leases for short terms.

There are a great many cases in which the court say that the words "grant and demise," in a lease for years, imply a covenant for quiet enjoyment. It may be generally remarked of those cases, that the lease under consideration contained either one or both of those words, and the court contented itself by saying that a covenant was implied from them. They go no further. The only case I have seen which goes further is *Baxter* agt. *Ryers* (13 *Barb.* 267). In that case the question was directly up, and it was decided that a contract for quiet enjoyment will not be implied in a lease for years, either from the act of leasing, or from any words sufficient to make a lease, except the words "grant or demise." I think the learned judge who delivered the opinion of the court in that case would have examined the question more carefully than he seems to have done, if he had not regarded the statute to which he referred, decisive of the case. We were also cited by the counsel for the defendant to the case of *Lovering* agt. *Lovering* (13 *New Hampshire, R.* 517). By the lease in that case a freehold was created, and what was said on the question which I am now considering was *obiter*. The action was upon a lease, in the following words: "I have let and leased, and by these presents do let and lease, unto Mary Lovering, for and during the full term of her natural life, two acres of land, &c., and as much firewood as she wants off of the hundred acres, a part of which she conveyed to me, and oxen to haul it and do all her other ox work," to have and to hold the premises "according to the true intent and meaning as before written, without the least hindrance, &c., from me, my heirs, or any other person." There were two breaches assigned. 1st. That the defendant did not permit plaintiff to take firewood from the one hundred acres. 2d. The defendant did not furnish oxen to haul plaintiff's firewood, and do her other ox work.

The plaintiff recovered damages for the matters assigned as breaches, and the recovery was sustained. The question was not up in the case of *Messent* agt. *Reynolds* (54 *E. C. L.* 194), and the court expressed no opinion upon it. TINDAL, C. J., seemed to think that a covenant for quiet enjoyment would be implied from a mutual agreement to let and take. CRESWELL, J., was not prepared to admit it. The case was disposed of upon the assumption (without deciding) that it would be implied. *Smith* in his lectures on *Landlord and Tenant* (*p.* 206), says : "The great principal right of the tenant against the landlord is *to be maintained in the peaceable and quiet enjoyment* of the property demised to him. And this right the law appends to every tenancy, whether there be an express covenant for quiet enjoyment contained in the lease or not."

*Rawle* in his treatise on *Covenants for Title* (2*d* ed. 472), says : " On the creation of an estate less than freehold, a covenant for title has been from the earliest times implied from the words of leasing, such as ' *demissi, concessi,*' &c., and such is the law of the present day." The same rule is laid down in *Taylor's Landlord and Tenant* (§ 304). In *Hart* agt. *Windsor* (12 *M. & W.* 85), PARKE, B., said : " The word ' let,' or any equivalent words which constitute a lease, have, no doubt, the effect to raise a covenant or undertaking of quiet enjoyment." In *Bandy* agt. *Cartwright* (9 *Exchequer R.* 913), it was ruled that a contract for quiet enjoyment is implied in a demise for a term of years by parol (*see also Coe* agt *Clay*, 15 *E. C. L.* 492). In *Maule* agt. *Ashmead* (20 *Penn.* [8 *Harris,*] 482), it was held that a contract for quiet enjoyment is implied in a verbal lease for a term of years. In *Young* agt. *Hargrave* (7 *Ohio R.* 427), the action was upon an implied covenant for quiet enjoyment in a lease. The only words of leasing were " have rented." The court said, " a warranty is implied from any contract for the possession of lands amounting to a lease for years, no matter in what words it is framed." In

*Hart* agt. *Smith* (2 *A. R. Marshall's R.* 302), an undertaking for quiet enjoyment was implied from the words " I have rented to, &c." " I have rented to," were the only words of leasing in the very informal instrument in that case. (*See Wade* agt. *Halligan*, 16 *Illinois R.* 507 ; *Baugher* agt. *Wilkins*, 16 *Maryland R.* 35.)

In *Viner's Abridgement* (*covenant F*), it is said : " If a man leases for years and ousts the termor, he. shall have covenant against him, though there be no express covenant in the deed." This has been frequently ruled. (*Dexter* agt. *Manley* (4 *Cushing*, 14), was an action by lessee against lessor on an implied covenant for quiet enjoyment. The disturbance of the lessee's enjoyment was committed by the lessor himself. SHAW, C. J., delivering the opinion of the court, said : " It is unnecessary to consider whether a covenant would be implied amounting to a warranty against paramount title, or against the rightful claims of third persons ; it is sufficient to say that the lease contains an implied covenant by the defendant against his own acts. Every grant of any right, interest or benefit, carries with it an implied undertaking on the part of the grantor that the grant is intended to be beneficial, and that so far as he is concerned he will do no act to interrupt the free and peaceable possession of the thing granted." The same principle is established upon authority and sound argument in *The Mayor of New York* agt. *Mabie* (3 *Kern. R.* 151). But the plaintiff cannot, as he sought upon the argument to do, sustain his verdict upon this principle, for if there was not in the lease .an undertaking for quiet enjoyment against paramount title or the rightful claims of third persons, the acts of the defendant complained of, would be rightful, by reason of his purchase at the sale under the judgment in the action of foreclosure. We are of opinion, as I have already said, that the lease contains an implied undertaking for quiet enjoyment in its largest sense. The provision of the Revised Statutes (1 *R. S.* 738, § 140),

that. " no covenant shall be implied in any conveyance of real estate, whether such conveyance contains special covenants or not," does not embrace leases for years (*Mayor of New York* agt. *Mabie, supra*).

2*d.* The next exception which I shall consider grows out of the refusal to rule that " the covenant for quiet enjoyment, whether expressed or implied, is limited to the estate of the lessor." This would seem to be so as to implied covenants in certain cases, as where the estate out of which the term was carved was a limited one. Here the estate of the lessor was a fee, and in such case there is no such limitation upon the covenant or undertaking. Indeed, I doubt whether the implied covenant or undertaking would be thus restricted in any case where the lessor on the face of the lease asserted that he held the demised premises in fee. It is a rule of evidence rather than a principle of law.

3*d.* The next exception grows out of the refusal of the court to decide that the matters in issue in this action were finally and conclusively, as between the parties to this action, determined upon the application for the writ of assistance. The decisions upon such summary applications or motions are not *res adjudicata* (*Simson* agt. *Hart*, 14 *John. R.* 63). It does not appear upon what ground the motion was decided. Upon principle, to be *res adjudicata*, the very matters in issue here, must have been directly and not collaterally involved there. This was not the case. The decision of that motion probably turned upon the clause in the judgment awarding possession to the purchaser, without considering the matters in issue here. The plaintiff was left to his action. *Dwight* agt. *St. John* (25 *N. Y. R.* 203), does not embrace a case like this one.

4*th.* The next exception is upon the refusal of the court to rule as matter of law that there was no eviction proved. The court submitted the question to the jury. There was plainly an *actual* eviction of the plaintiff from his posses-

sion under his term.   I am unable to see what more the plaintiff could have done to retain possession under his lease, unless it was to resist the sheriff, and that would have been unlawful.   It was none the less an eviction, because the plaintiff stipulated for delay to enable him to find some other place in which to put his property and carry on his business.

5th.  The next exception is to the refusal of the court to rule as matter of law that the arrangement of February 10th, was a surrender of the lease upon which this action is brought.   Such plainly was not the intention of the parties.   I am not aware of any principle upon which the judge at the trial could, under the circumstances of the case, have properly ruled as he was requested to by the counsel of the defendant.

6th.  The remaining exception brings under review the ruling at the trial upon the measure of damages.   The court ruled that "the measure of damages was the value of the unexpired term of the lease at the time of the eviction, over and above the rent reserved by the terms of the lease."   Naturally, and upon general principles, the measure of damages upon the breach of covenant for title appended to an executed conveyance of an estate, is the value at the time of the breach, of the estate lost.   If the estate has been by improvement increased in value, such increase could not be recovered unless the improvements were within the contemplation of the parties at the time of the making of the covenant.   For the damages which can be recovered upon contract, must flow directly and naturally from the breach—must be such as the parties by bestowing proper attention upon the subject at the time of making the contract, might have contemplated as likely to result from its breach, and must be capable of being established with that degree of certainty which is required in judicial investigation.   (*Griffen* agt. *Colvin*, 16 *N. Y. R.* 487; *Williams* agt. *Barton*, 13 *Louisiana R.* 404; *Hadley*

agt. *Baxendale*, 9 *Exchequer R.* 341; *Evan's Pothier on Obligations*, 161.)

The civil law has adopted the rule of damages upon the breach of covenant for title, above stated. In England, and in this and many other of the states, this rule has been departed from, and where there has been no fraud an arbitrary rule has been established, as best calculated to generally subserve the ends of justice. By this rule, the damages upon the breach of covenant for title is the price paid, with interest not exceeding six years. It was established partly in analogy to the ancient remedy on warranty, by which the demandant recovered of the warrantor other lands of equal value with the lands computed at the time when the warranty was made from which he was evicted, but probably more from the hardships and difficulties which it was conceived might attend the application of the natural rule. (*Staats* agt. *Ten Eyck*, 3 *Caine's R.* 111; *Pitcher* agt. *Livingston*, 4. *John. R.* 1; *Rawle on Covenants for Title.*)

The same rule is applied to executory contracts to convey lands, where the vendor is unable to perform by reason of defective title, and has been guilty of no fraud or deception. But I understand this distinction to be recognised and settled, that if the executory vendor has it in his power to perform his contract and refuses to do so, or has wrongfully put it out of his power, he takes himself without this arbitrary rule, and becomes liable under the general rule for the value of the estate at the time it was to have been conveyed. So too, in the case of covenant for title in an executed conveyance, if the covenantor becomes himself an actor in ousting his grantee, in breach of his covenant, he puts himself without the pale or protection of this arbitrary rule of damages, and becomes liable upon his broken covenant for the value of the estate he was instrumental in taking from his grantee. (*Brinkerhoff* agt. *Phelps*, 24 *Barb. R.* 100; *Tracy* agt. *Albany Ex.*

*Co.* 3 *Seld. R.* 472 ; *Trull* agt. *Granger,* 4 *Seld.* 114 ; *Conger* agt. *Weaver,* 20 *N. Y. R.* 140 ; *Grant* agt. *Tallman,* Id. 191.)

Take this case for an example. The lessor in violation of his covenant with his lessee that he should quietly enjoy the demised premises for the full term, becomes an actor with another, and ousts his lessee from an unexpired term worth about $2,000, in such manner that trespass will not lie against him, and goes into the enjoyment of it himself. The lessee brings action upon the lessor's covenant for quiet enjoyment. What shall he recover ? I think the true answer is found in the rule laid down upon the trial. It was said by the counsel of the defendant, that Mr. Dorsheimer, by his purchase at the foreclosure sale, became the owner of the equal undivided half part of the demised premises; that the plaintiff was therefore only evicted by the defendant from the one undivided half part of them, and that the defendant was at most only liable for the one-half of the value of the unexpired term. The answer to this position is found in what I have already said. It was the eviction, and not the sale under the judgment in the foreclosure action, that constituted the breach of the defendant's covenant for quiet enjoyment. And it is the active part which the defendant took to cause the eviction of the plaintiff from the demised premises, that takes his case out of the rule of damage established for the protection of those who have acted in good faith, and places it under that rule which gives to the lessee the damages which he has suffered, *propter ipsam rem non habitam.* I do not see how a case can be partly under one rule and partly under the other. The conduct of the defendant must place it entirely within one of the rules.

Judgment is ordered upon the verdict, with costs.