JAMES MYERS, Appellant, v. JAMES L. BURNS, Respondent.

In an action for rent, the defendant may, under a covenant of the landlord to keep the premises in repair, set up, as a counterclaim, an amount expended by him in the necessary repair of the premises, and also damages sustained by the loss of the use of certain parts of the premises rendered untenantable for want of repair.

In such action, defendant may recover for his expenses in repairs, even when they exceeded what it would have cost the landlord, had he employed his own mechanics.

In the leasing of premises for a first-class hotel, a covenant to keep the same in repair is broken by permitting the flues to remain in such condition that the rooms cannot be used with a fire, owing to the issuing of smoke from the grate into the room, whenever a fire is lighted therein.

*John H. Reynolds,* for the appellant.

*James Emott,* for the respondent.

HUNT, J. This is an action for rent on a lease, dated May 28th, 1856, brought by the grantee of the reversion against the assignee of the term. The present defendant went into possession of the premises September 20th, 1856.

The defense is a counterclaim, under a covenant of the landlord to keep the premises in repair. There is also connected with the covenant to repair, an agreement that if the premises were damaged by fire, so as to be unfit for a first-class hotel, the rent should abate. The counterclaim set up in the answer is, 1st, for $908, expended by the defendant in repairs; and 2d, for $700 damages occasioned by the loss of the use of four rooms, alleged to be untenantable for the want of repairs.

The rent due was $1,000, with interest from August 1st, 1858.

The jury found specially $752.57, amount of repairs made by the defendant, and $300 damages for the loss of the use of the rooms. These amounts left a balance of $9.45 due to the defendant, for which he had a verdict.

The most important questions in the case were questions of fact, which were carefully and correctly submitted to the

jury upon the trial, and in relation to which their decision is final.

A question arose upon the charge for painting, on which an exception was taken by the plaintiff. Certain portions of the wood work of the hotel were repainted by the defend-ant with zinc paint, which was about fifteen per cent more expensive than common lead paint, which was the original style of painting, and was more durable and more orna-mental. The court charged, that "the defendant was entitled to recover the full expense of the zinc paint, although it was more expensive than the description of paint originally employed, it appearing that it was more desirable and a better material than white lead." This charge was correct. The plaintiff had the option of making these repairs by his own mechanics, and with such suitable materials as he should select. His omission to do so gave the defendant the right to make them by his mechanics, and with such suitable mate-rials as he should select. He was bound to be reasonable and judicious in his repairs; but he was not compelled to select precisely the same kind of paper or paint, or to be precise that the expense was not a farthing greater than had before been expended upon the same spot. He was at liberty to repair according to the modern style, and adopt modern improvements. The testimony showed that the repair for the purpose in question was an useful one, that it was necessary, and that it was not extravagant. The charge of the judge, and the finding of the jury under it, are unexceptionable.

The plaintiff also objects to the allowance of damages, and to the rule of damages adopted, on account of the loss of the use of certain rooms through a defect in the flues of the chimney. It appears that, during some portion of the time, four rooms fronting on Hicks street were of no use to the defendant. When fires were kindled in them the flues would not draw, but the gas and smoke issued out into the rooms, rendering them uninhabitable. The court charged the jury "that the defendant was entitled to recover of the plaintiff as a counterclaim, the damages which he, the defendant, had sustained by reason of the loss of the use of the rooms, so far

as caused by a defect in the flues of the chimney, without reference to the cause of the defect, and that the fair value of the use of such rooms, for the time they were unoccupied by reason of such defect, was the amount to which the defendant was entitled." This charge involved two propositions: first, that the plaintiff was responsible, although the defect in the flue was in its original construction, and had not occurred through dilapidation or decay; and secondly, that the loss of the use of the rooms afforded the rule of compensation, instead of the expense of actual repair by the defendant. The exception was to the entire charge as stated. If either of the propositions was correct, the exception was too general, and is unavailing. I think the charge, however, was correct in both aspects.

On the first point. The plaintiff's grantor leased the premises in question as a "first-class hotel," and he covenanted "to keep the said hotel and premises in good necessary repair during the term, at his own proper charge and expense." Are the rooms of a hotel in good repair for such a purpose, when they are so smoky that they cannot be occupied; or when the more offensive coal gas issues at all times from the lighted grate and fills the room with its noxious substance? No tenant or occupant can inhabit such rooms when a fire is needed, and fires are needed in the city of Brooklyn during three-fourths of the year. A house or a room that cannot be comfortably and safely inhabited is not in good repair. A room in a first-class hotel, where women and children usually form portions of the family, cannot be tenantable or in good repair unless a fire can be had when desired. Nor is it important, either to the tenant or landlord, whether such defects in the flues are caused by dilapidation or arise from original misconstruction. The rooms are equally untenantable and uninhabitable; they are equally out of repair, from which cause soever the difficulty may have arisen. The grates are in their places, and the flues are in the walls. No new structures of an original character are required. It is only required that those in the building should be made to perform their proper duty. The party agrees to "keep" in repair, and if, to

keep in repair, it is necessary that the rooms should first be put in repair, the lessor is bound to perform that duty. (Mayne on Damages, 133 ; 92 Law Library ; *Payne* v. *Haines,* 16 Mees. & Wels., 541.) There is no covenant that the rooms be kept in their then condition of repair, and no exception of natural wear and natural decay ; but good repair and good condition, at all times, is the fair intent of the agreement. The requirements of a first-class hotel in Brooklyn demand all the comforts and conveniences, and many of the luxuries, of civilized life. Different standards of comfort and civilization prevail in different parts of the world. The location in question was that of the second city of the State, immediately adjoining the city of New York, and the general standard of that latitude must be assumed. A hotel of the first class, in such a location, without the means of heating its rooms, would not be tolerated. It would not, indeed, be a hotel of that character. If the rooms had been rendered untenantable, by water from the roof, would it have been an answer to the request to repair, that the leak existed when the lease was entered into? If the ceilings had fallen, or the rooms were filthy from dirt and want of paint, it certainly would have been no answer, that they were in that condition when the lease was made. The condition of the covenant, to keep in repair, as already stated, can only be performed by first putting in repair, when that is necessary. (*Beach* v. *Crain,* 2 Com., 86, and cases *supra.*)

The second proposition involved the extent of the damages ; the plaintiff claiming that the defendant was entitled to no larger sum than it would have cost if the defendant had himself repaired the defect, and the defendant claiming that he was entitled to recover as damages the loss that he actually sustained, from being deprived of the use of the rooms.

The defendant had two different remedies, of either of which he could have availed himself, in the event of the plaintiff's failure to repair, after due notice. He could have made the repair himself, and have called upon the plaintiff to refund the expense, as he actually did, in the case of the painting ; or he could have called upon the plaintiff to

take the ordinary responsibility of a party failing to perform his contract, to wit: to pay the damages caused by such failure, as he did in regard to the item in question. In the first case, the rule confines the damages to the actual expense, if no special damage is shown; but in the other, the cost of the repair is not an element in the case. It is as if there was no such right to repair, on the part of the lessee, but the claim rested solely in damages. In *Griffin* v. *Colver* (16 N. Y., 489), it was held that, in the case of a failure to deliver a steam engine at the time contracted, the party injured could recover all his damages, including gains prevented as well as losses sustained, provided they were certain, and such as might naturally be expected to follow the breach. According to the reasoning of the learned judge in that case, the damages for the loss of the use of the rooms, as here claimed, are both certain and proximate. (See, also, *Freeman* v. *Clark*, 3 Barb., 424, as explained by Judge SELDEN; and *Trull* v. *Granger*, 4 Seld., 115; and *She* v. *Rowlands*, 9 Car. & Pay., 734; 38 Eng. C. L.)

The judgment should be affirmed.

Judgment accordingly; all the judges concurring, except MORGAN, J., who read a dissenting opinion, in which DAVIES, Ch. J., concurred.