# N. Y. SUPERIOR COURT.

### JOHN DOUPE agt. SINDNEY C. GENNIN.

Where a lease of a building and premises for a term of years, contains a mutual cov-
enant on the part of the landlord and tenant, that in case the premises are so
damaged by accidental fire, as to make them untenantable for more than thirty
days, the rent shall cease at the option of the tenant until the premises shall be
repaired, and no covenant on the part of the landlord to repair, nor any other ex-
press covenant on his part; on a partial destruction of the premises by fire, the
landlord is not responsible to the tenant for damage to his property, by exposure
to the elements, or otherwise, by not making immediate repairs after the fire.

A subsequent *parol promise* to repair, made by the landlord, is not good unless sup-
ported by a sufficient consideration.

The tenant's remedy in such a case is under the covenant in the lease, to require an
abatement of the rent until the premises are repaired.

*General Term, January,* 1869.

THE defendant was the owner of the building, No. 707
Sixth avenue, in this city. He rented the store and base-
ment to the defendant for a term of five years and ten
months, and the upper part of the building to one Trenor,
for a dancing-hall. A fire occurred in an adjoining building,
which communicated with the upper part of the defendant's
building, consuming the roof and most of the building
above the first story.

The complaint alleged that the defendant covenanted, by
and in the *giving* of the lease, that the plaintiff should have
quiet, peaceable, and full use of the store and basement
during the term ; and that the part of the building above
the store would be kept in such repair and order that the
plaintiff could safely, and without damage, use and occupy
the store and basement for his business, and could sefely
keep upholstery and furniture and similar property therein.

The lease to the plaintiff, which was set out in the de-
fendant's answer, contained no such covenants as were al-
leged in the complaint. It did, however, contain a coven-

ant *on the part of plaintiff,* to keep the demised premises, during the term, in good and substantial repair, and to give and surrender the premises, at the expiration of the term, in as good and substantial repair and condition as reasonable use and wear thereof would permit, damages by *accidental fire* excepted. And there was a mutual covenant, that in case the premises were so damaged by accidental fire as to make them untenantable for more than thirty days, the rent should cease *at the option of the plaintiff,* until the premises should be repaired.

The complaint further alleged, that the roof of the building was nearly destroyed, so that the store of the plaintiff had no cover or protection against rain and storm, and that the property of the plaintiff therein, was injured by rain and snow. That the plaintiff demanded of the defendant that the roof should be immediately repaired, and his property protected from damage by the elements, and that he promised to do so. That several days of clear weather occurred next after the fire, during which the defendant could have temporarily repaired the roof, so as fully to have protected the plaintiff's property; but that the defendant neglected so to do, and the plaintiff's property was exposed for two and a half months to rain and snow falling upon the building, and coming through the ceiling of the plaintiff's store, injuring his property, and rendering the store and basement unfit for use.

The answer alleged that the building was damaged to such an extent by the fire as to render it wholly untenantable for sixty days thereafter.

The action was tried by Mr. Justice BARBOUR, and a jury.

On the trial it was proved that the defendant commenced repairing the roof some eighteen days after the fire; that no temporary roof or covering was put up to protect the plaintiff's store and property; that such temporary roof or covering might have been put up which would have protected

the plaintiff's property. The repairs were not completed until two and a half months after the fire, during which time the plaintiff's property in the store was injured by rain and snow, and he was otherwise injured, in being deprived of the use and enjoyment of the premises.

A motion to dismiss the complaint on the ground that no cause of action had been shown against the defendant, was denied, and the defendant excepted.

There was evidence given on the part of the defendant, tending to show that the whole roof was burnt, except a small portion in front; the upper stories, in front, were substantially destroyed, and nothing was left but the walls and the stores on the first floor and the basements; that the defendant was dilligent in making the repairs, and the delays, if any, were owing to the severity of the weather.

At the close of the evidence the defendant again moved to dismiss the complaint, on the ground that, there being no covenant in the lease to repair, the landlord was not bound to repair, and was not liable for damages. The motion was again refused and the defendant excepted.

The court charged the jury, "that it was the duty of the defendant, immediately after the occurrence of the fire, so soon, at least, as a prudent and careful man would do it, if the whole thing belonged to him—the property in the store and all—just as soon as a prudent and careful man would, to go on and reconstruct the building—that is, put on the roof, and save the things from the storm; and after commencing the work, he should have carried it forward with reasonable and proper and customary vigilance until it was completed. If he failed to do that, and the water penetrated the store of the plaintiff, because of any improper delay in putting on the roof, on the part of the defendant, he is liable for the damage so caused."

The defendant excepted to the charge.

The jury rendered a verdict for the plaintiff, assessing the damages at fifteen hundred dollars.

The defendant appealed.

J. E. PARSONS, *for appellant.*
JAMES EMOTT, *for respondent.* .

*By the court,* MONELL, J.   The lease of the plaintiff contained a covenant on his part to keep the premises in repair during the term.   There was no covenant to repair on the part of the landlord, nor any other covenant on his part, except the covenant relating to the abatement of rent during the time the premises might be made unteantable by fire.

A covenant of quiet and peaceable enjoyment may, however, be implied (*Mayor of New York* agt. *Mabie,* 13 *N. Y. R.,* 151), but a mere interruption of the use and enjoyment of the premises, consequential upon repairs being made of other parts of the building, without an actual entry upon the demised premises, and an eviction, actual or constructive, of the tenant therefrom, would not be a breach of such covenant.   In *Gardner* agt. *Keteltas,* (3 *Hill,* 330), which was an action for not being put into possession of the demised premises, the covenant was construed to mean, that the lessor shall have such a title as shall enable him to give a free and unincumbered lease for the term demised, but that there was no warranty against the acts of strangers.   In *Howard* agt. *Doolittle,* (3 *Duer,* 464), it is said that the covenant means that the tenant shall not be evicted by a paramount title; that it relates only to the *title,* and not to the actual possession or undisturbed enjoyment, where there is no eviction from the premises demised.   And a tresspass committed by the lessor was held not to be an eviction (*Levy* agt. *Bond,* 1 *E. D. Smith,* 169; *Taylor L. and T.,* 124).

In the case of *The Mayor of New York* agt. *Mabie* (*supra*), where the covenant was held to have been broken, by an unlawful interference by the lessor, with the enjoyment of the premises, by the lessee, the lessor had entered upon

the premises, and assumed the entire control thereof, under a claim of right, amounting to an eviction. It was not intended in that case to extend the force of the covenant beyond a protection to the lessee against the unlawful entry of the lessor himself, and it is clearly intimated that the entry must be under an assumption or claim of title to the premises. Otherwise it would be a mere trespass and not a breach of the covenant.

The covenant of quiet enjoyment is not broken by the landlord's neglecting or refusing to keep the premises in repair. The letting implies no obligation by him that the premises shall be or shall continue fit for the use for which the tenant designed them (*Howard* agt. *Doolittle, supra*), or even that they are or shall be tenantable (*Cleves* agt. *Willoughby*, 7 *Hill*, 83 ; *Sherwood* agt. *Seaman*, 2 *Bosw.*, 127 ; *Post* agt. *Vetter*, 2 *E. D. Smith*, 284).

There does not seem, therefore, to be any covenant of the defendant, express or implied, upon which this action can rest, the only covenant suggested by the plaintiff's counsel being the implied covenant of quiet enjoyment, which the cases I have cited show very clearly is not broken by any of the acts of the lessor complained of in this case.

The covenant of the plaintiff to pay rent, without a special agreement to the contrary, would have continued after the fire, except for the statute of 1860 (*Sess. Laws, ch.* 345, *p.* 592 ; *Gates* agt. *Green*, 4 *Paige*, 355 ; *Willard* agt. *Tillman*, 19 *Wend.*, 358 ; *Howard* agt. *Doolittle, ubi supra*). By that statute a tenant is discharged from the payment of rent after the destruction by fire of the demised premises, and the lease is terminated, So that, if the fire had rendered the buildings wholly untenantable, the plaintiff could have availed himself of the provisions of the statute, and surrendered possession ; or, under the covenants in the lease, have required an abatement of the rent until the premises were repaired. In the one case, the lease would have been an-

nulled, the term ended, and the covenant to pay rent discharged; in the other, the rent only would have ceased until the premises were repaired. If the plaintiff continued to hold the possession, he must be deemed to have held under his lease, and to be subjected to all its burdens.

A subsequent parol promise to repair would be good, if supported by a sufficient consideration (*Post* agt. *Vetter, ubi supra*). Or, if the defendant had entered upon the demised premises to make repairs, under the reservation of such right in the lease, and had made them in a wanton, or unskilful, or even negligent manner, he might be liable (*Turner* agt. *McCarthy,* 4 *E. D. Smith;* 547.) But there was no consideration whatever for the promise which the plaintiff proved, nor was there any entry upon the plaintiff's premises, nor any injury resulting from the repairs.

I have not, therefore, been able to find any obligation, express or implied, on the part of the defendant, either in the lease or the parol promise, the breach of which would constitute a cause of action; nor do I understand that the case was put to the jury upon any such grounds.

The jury were charged that it was the *duty* of the defendant to make the repairs immediately after the fire. But whether such duty was imposed by any legal obligation contained in the lease, or arose from the mere relation which the parties bore toward each other, of landlord and tenant, irrespective of any covenant or promise, the jury were not told. But they *were* instructed, that if the defendant failed to make the repairs, he was liable.

I have endeavored to show, that the charge to the jury is not supported by any legal obligation resting on the defendant under the lease; nor upon any subsequent promise to repair; nor for trespass, by entry upon the plaintiff's premises.

Is there any other principle of law on which it can be sustained?

There is a class of wrongs known as *misfeasances*, for which remedies are provided. In those cases, however, the injury must be the direct result or effect of the act complained of. The mere omission to do a thing, which a person is not required to do, would incur no liability (*Thorn* agt. *Deas*, 4 *John. R.*, 84). But if the thing is undertaken to be done, and is done improperly, a right of action arises.

The defendant was under no legal obligation to repair the building; and had he chosen, he could have left it as it was at the end of the fire, and would, at most, have lost the rent for the remainder of the plaintiff's term. But the building might have remained unroofed to the present time, without the defendant incurring any responsibility for any injury to the plaintiff's possession or property. The plaintiff had his remedy. He could have removed his property, surrendered his possession, and canceled his lease; or, if he preferred to occupy the premises in the condition the fire left them, he could abate the rent.

The injury complained of was caused by water and snow coming through the ceiling into the plaintiff's store, and it is not even claimed that the flow was increased by any thing done in rapairing the roof, If, therefore, the defendant had wholly omitted to replace the roof, and the plaintiff had continued to occupy his store, the injury might have continued to the present time. How then can the defendant be liable for not doing, within a reasonable time, a work which he was *not* bound to do at all, especially where the injuries complained of resulted from the *omission* and not from the *manner* of doing it?

The case differs from *Turner* agt. *McCarthy* (*ubi supra*), where the lessor entered for the purpose of making repairs, and they were made in a wanton and unskilful manner, and were the direct and immediate cause of damage to the lessee's property. It also differs from *Edgerton* agt. *Page* (20

*N. Y. R.*, 281), where the injury to the lessee's property was the direct result of the lessor's acts.

I cannot perceive in what respect a partial injury of the premises could give a greater or better claim upon the defendant than if there had been a total destruction, in which latter event, I presume it will not be contended, that the landlord would be bound to rebuild, or that he would be responsible for damage to the plaintiff's property, by exposeure to the elements or otherwise,

There may be some principle which I have not been able to discover, upon which this judgment can be upheld. Those suggested by the respondent's counsel are, none of them, in my opinion, sufficient.

My conclusions require a *reversal* of the judgment, and the ordering of a new trial, with costs to the appellant to abide the event.

JONES and FITHIAN, JJ., concurred.