Brewer, J.
The first two grounds of error presented by counsel in their brief seem scarcely warranted by the record. It is said that the court erred in sustaining a challenge for cause. The record is not altogether clear, but it seems more probable that the juror was excused at his own request than on account of the challenge. It says that the juror was challenged for cause, and the challenge *458 sustained. But it also says that the juror stated that if one of the-witnesses in the case, an agent of the plaintiffs, was to be affected by the result, he should not like to sit as a juror; that he should certainly believe such witness; and then adds that “on his own request the court excused him.” It does not appear that there was any difficulty in obtaining a wholly impartial jury, and we think there is nothing in this action of the court to justify us in disturbing the judgment. State v. Dickson, 6 Kan. *209.
2. The next objection is that the court rejected certain testimony. As this testimony was subsequently admitted, we suppose any error in the ruling, if error there was, was avoided.
3. The third alleged error, and the main question in the case, is as to the ruling in reference to the measure of damages. Upon this there was no specific instruction given by *the court to the jury. The question arises on the admission of testimony, and the rulings of the court thereon. The important fads are these: W. R. Power, one of the defendants, made a contract with the plaintiffs by which they were to ship to him from their nursery at Macon City several hundred dollars’ worth of fruit trees. There was a dispute in the testimony as to the amount of the contract, and the place of delivery. Power testified that the amount was $1,000, and the place of delivery Marysville. He also testified that prior to this contract he had contracted to deliver fruit trees in Mitchell and Osborne counties, one hundred miles or so west of Marysville, and beyond the reach of the railroad. He further testified that these contracts he had so made were disclosed to the plaintiffs; that the trees purchased from them were to fill these contracts; and that the plaintiffs knew, at the time of their contract, that the trees they were selling were purchased for that purpose. He further testified that the men to whom he had contracted trees were responsible; that he failed in his contracts by reason of the default of plaintiffs, and lost the profits he would otherwise have made. He was then asked what would have been those profits, and to this, question the plaintiffs objected. The court overruled the objection,, and the testimony was admitted. Was there error in this ruling?
Plaintiffs contend that the measure of damages was the difference between the contract price and the market value at the time and place of delivery fixed by the contract. That this is the general rule in case of the breach of a contract for the sale of chattels cannot be doubted. Sedg. Dam. 260, and cases cited in notes. But this rule is not without its exceptions, and the case at bar presents one. The profits which a vendee might realize by subsequent disposal of the chattels are not considered in the estimate of damages, because such profits are speculative and uncertain. He may or may not sell. Prices may go up or down. Parties cannot be deemed to have foreseen or contracted for the possible changes subsequent *to the time of delivery. If an article of ordinary merchandise, it may be presumed that it is purchasable at the market price. But *459 where property is purchased for a specific purpose, known to the vendor at the time of the contract, it is but just to hold that he contracted with reference to that purpose, not merely in respect to the kind and quality of the goods, but also in respect to the injury to result from a breach; especially when, in a case like this, it is evident that in a case of a breach the vendee will be unable to obtain like goods elsewhere in time to accomplish that purpose. And where property is bought to fill contracts already made, the profits are not speculative or uncertain. They are the subject of almost exact mathematical computation. The loss of the profits is the direct, immediate result of the breach. Their amount is definite and certain. This result must have been foreseen by the vendor, and the contract made with reference to it. Upon principle, then, he ought to be responsible. Thus the vendee receives compensation, otherwise not. Authorities support this. Messmore v. New York S. & L. Co., 40 N. Y. 422, is-a ease almost exactly parallel. There was a contract of purchase to fill existing contracts of sale known to both parties, and the profits of the resale were allowed as proper damages upon a breach. Mason, J., in delivering the opinion of the court, says: “The general rule of damages ordinarily is the difference between the contract price and the market value of the article at the time and place of delivery fixed by the contract. * * This rule, however, is changed when the vendor knows that the purchaser has an existing contract for a resale at an advanced price, and that the purchase is made to fulfill such contract, and the vendor agrees to supply the article to enable him to fulfill the same, because those profits which would accrue to the purchaser upon fulfilling the contract of resale may justly be said to have entered into the contemplation of the parties in making the contract.” See, also, Griffin v. Colver, 16 N. Y. 489; Myers v. Burns, 35 N. Y. 273; Morrison v. Lovejoy, 6 Minn. 319, (Gil. 224;) Johnson v.*Mathews, 5 Kan. *122.
By the Roman law, in case of the breach of the contract of sale by non-delivery, the measure of damages was all that the buyer lost or failed to gain in relation to the thing itself, over and above the price paid; id quod interest propter rem ipsam non habitam. In the draft of a civil code prepared by the code commissioners of the state of New York, the general rule for the measure of damages on the breach • of a contract is stated to be “the amount which will compensate the-party aggrieved for all the detriment proximately caused thereby,, which the party in fault had notice, at the time of entering into the contract, or at any time before the breach, and while it was in his power to perform the contract upon his part, would be likely to result from such breach, or which, in the’ ordinary course of things, would be likely to result therefrom.” Civil Code, § 1840.
We see no error in the admission of this testimony, and the judgment of the district court will be affirmed.
(All the justices concurring.)