(23 Misc. Rep. 126.)

## NIMMO v. HARWAY.

(Supreme Court, Appellate Term. March 28, 1898.)

1. DESTRUCTION OF LEASED PREMISES—RIGHTS OF TENANT.
   In an action brought by a tenant, after the premises had been rendered untenantable by fire, and he had abandoned them, to recover a sum deposited with the landlord as security, it appeared that the lease provided that the tenant, in case of fire, should give immediate notice thereof to the landlord, who should thereupon cause the damage to be repaired forthwith, but that, if the premises were so damaged that the landlord should decide to rebuild, the term should cease. *Held,* that this covenant furnished the measure of the tenant's liability, and that the statute (Laws 1860, c. 345; Real Property Law, § 197) had no application.

2. SAME—COVENANT TO REPAIR.
   In a covenant by a landlord to make repairs "forthwith" after notice of damage, the word "forthwith" means within a reasonable time or without unnecessary delay.

3. SAME—DELAY OF LANDLORD.
   If, under such a covenant, the tenant waits a reasonable time for the landlord to do the work, and it is not done, the tenant may remove from the premises if he has been and is deprived of the beneficial use and enjoyment of them.

4. SAME.
   In such a case, if the premises are rendered wholly untenantable by fire, and the landlord is immediately notified, a delay of nine days without taking any steps in the matter is unreasonable.

Appeal from Ninth district court.

Action by George Nimmo against May A. Harway to recover $250, deposited by plaintiff with defendant as security for the faithful performance of the terms of a lease. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIE-GERICH, JJ.

G. O. & L. S. Hulse, for appellant.

Geo. F. Alexander, for respondent.

GILDERSLEEVE, J.  The plaintiff claims to recover on the ground that the lease was canceled by reason of the fact that the premises were so injured by fire on September 20, 1896, as to become untenantable and unfitted to carry on the business for which they were rented, and that the defendant failed to cause the damage thereto to be forthwith repaired.  This question is presented:  Was the emergency contemplated by St. 1860, c. 345, which is an injury by fire making the premises untenantable, covered and provided for by the terms of the lease, and thereby taken out of the scope and operation of the statute?  The act in question provides as follows, viz.:

"The lessees of any building, which shall be destroyed, or be so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, shall not be liable or bound to pay rent to the lessor or owner thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant."

The fire clause in the lease in question is as follows:

"The tenant shall, in case of fire, give. immediate notice thereof to the landlord, who shall thereupon cause the damage to be repaired forthwith; but, if the premises be so damaged that the landlord shall decide to rebuild, the term shall cease, and the accrued rent be paid up to the time of the fire."

It was the conclusion of the trial justice that the covenant under consideration did not avoid the operation of the statute, and did not create a case where the parties have "otherwise expressly provided by written agreement or covenant."  In Butler v. Kidder, 87 N. Y. 99, the court of appeals hold that it is not essential, in order to exclude the lessee from the benefit of the statute, that there should be a covenant, in express terms, obligating him to pay rent, although the building becomes untenantable; but it is sufficient if the intention to take away such benefit is clearly shown on the face of the lease, as where it appears that the parties, having in mind the contingency mentioned in the statute, inserted provisions or covenants inconsistent with the right of surrender.  We think it must be said that the parties to this lease provided, by express covenant, for the contingency of fire, and that this, therefore, furnishes the measure of the tenant's liability, and that the statute has no application.  See Tocci v. Powell (Sup.) 41 N. Y. Supp. 511; Butler v. Kidder, supra.  It is necessary, therefore, to revert to the covenant under consideration, and to the incidents that happened, as established by the testimony, in order to determine the rights of the parties.

The fact is fully established that the premises were rendered untenantable by reason of the damage occasioned by the fire, and it further appears that the fire was not the result of any negligence or want of care on the part of the tenant.  The covenant in the lease imposed upon the landlord the duty of causing the damage to be repaired forthwith.  "Forthwith" means within a reasonable time, or without unnecessary delay.  After the landlord received notice of the fire, it was his duty to proceed with proper diligence to do whatever was necessary to remedy the injury, unless the premises were so damaged

that he decided to rebuild, in which case he should have notified the
tenant. If the tenant waited a reasonable time for him to do the
work, and it was not done, the tenant might remove from the prem-
ises if he had been and was deprived of the beneficial use and enjoy-
ment of them. O'Gorman v. Harby (Sup.) 41 N. Y. Supp. 521. Any
other construction would compel the tenant to resume possession at
an unknown and undeterminable period, measured only by the pleas-
ure of the landlord, which was evidently not the intention of the
contracting parties. Bacon v. Paper Co. (Sup.; McAdam, J.) 49 N.
Y. Supp. 620. As the premises had been rendered untenantable by
the fire, it was certainly a reasonable requirement, especially in view
of the express language of the covenant that they should be made
tenantable without unreasonable delay. Some diligence on the part
of the landlord was contemplated.

It appears from the testimony that the fire occurred on the morning
of the 20th of September, and that the same was brought to the knowl-
edge of the landlord almost immediately; but that no repairs what-
ever had been done up to the 29th of September, when the tenant
abandoned the premises. The witness Diebold, a baker, who was the
actual tenant and occupant of the premises, testifies:

"Q. How soon after the fire did you see Mr. Harway [the agent and repre-
sentative of the landlord]? A. On Sunday the fire was, and on Monday I saw
Mr. Harway. I had a conversation with him in regard to putting the place
in order, not the first time, but the second time he came around, Wednesday or
Thursday. I asked him if he had got through with his insurance. He said,
'No.' I asked him if he was going to have the place fixed up again, so that
I could start up again. He said, 'I don't know,' and turned around and walked
away, and I had no talk with him after that. Q. And he didn't come to see
you any more? A. No, sir. Q. This Monday that you speak of, where was
he or you? A. In front of the house, and the second time, too, in front of the
house. Q. Was the place in such a condition that you could not carry on your
business? A. Yes, sir. I couldn't carry on business. Q. How long after the
fire did you remain there waiting for Mrs. Harway to put the place in proper
shape for you to carry on business? A. From September 20th to September
29th; then I moved out. I couldn't do any business there. That is the reason
I moved out."

Harway, the agent of the landlord, testified that he first heard of
the fire on the afternoon of the 20th of September, the day of the
fire. With regard to his conversation with the tenant, he testifies,
"I said I would fix it up as soon as I got the insurance settled."

It must be said that the tenant waited a reasonable time for the
landlord to commence the work of repair, in accordance with the
provisions of the lease; that the landlord took no steps to repair the
untenantable premises, and was in default in not performing the con-
dition precedent with the diligence and promptness required; that
the tenant was deprived of the beneficial use and enjoyment of the
demised premises, and was justified in moving out. It appears from
the record that the landlord never demanded any rent after the fire
occurred. Had the landlord brought an action for the rent, we think
the tenant could have defended as upon an eviction. See Myers v.
Burns, 35 N. Y. 269; Sparks v. Bassett, 49 N. Y. Super. Ct. 270; 2
Tayl. Landl. & Ten. (8th Ed.) p. 381; Tallman v. Murphy, 120 N.
Y. 346, 24 N. E. 716; O'Gorman v. Harby (Sup.) 41 N. Y. Supp. 521.

While it is true that, after the breach of the covenant to repair on the part of the landlord, the tenant had the right to perform the work himself, and recover the cost in an action for that purpose, or upon a counterclaim in an action for the rent, he, nevertheless, was not bound to follow that remedy. He could choose between that remedy and the right to move out, as either of those courses was open to him under the law. See Tallman v. Murphy, supra; O'Gorman v. Harby, supra; Myers v. Burns, supra; Sparks v. Bassett, supra. He elected the latter. Under the circumstances, we are of opinion that the tenant was justified in regarding the lease as canceled, and his liability thereunder as terminated; and that the plaintiff is entitled to recover back from the defendant the sum of $250, which was deposited by him as security.

For the reasons above stated, the judgment appealed from should be affirmed, with costs to the respondent. All concur.