BARBOUR v. WATERSTON.

1. LANDLORD AND TENANT—REPAIRS—FORTHWITH.
    "Forthwith" as used in landlord's covenant to repair in written lease means "at once," "promptly," and "without delay;" is a relative term and will imply a longer or shorter period according to the nature of the thing to be done.

2. SAME—FIRE—DELAY IN REPAIRS—TERMINATION OF LEASE.
    Delay of 13 days in engaging contractor to remove debris after serious fire had occurred on premises used as a tool shop, hardware and sporting goods store, further delay of 6 days before contractor started removal and yet further delay of 11 days before letting contract to repair *held*, such an unreasonable delay as to justify termination of lease by lessee without liability for further payments of rent; especially when his efforts at ascertaining from lessor's agent as to when premises would be repaired were fruitless.

Appeal from Wayne; Stein (Christopher C.), J., presiding. Submitted April 22, 1936. (Docket No. 7, Calendar No. 38,730.) Decided June 16, 1936. Rehearing denied September 2, 1936.

Assumpsit by William T. Barbour and others, testamentary trustees, against James M. Waterston for rent due under a written lease. Judgment for plaintiffs. Defendant appeals. Reversed, and judgment ordered entered for defendant.

*Hunt & Field,* for plaintiffs.

*Guy W. Moore* and *Hal P. Wilson,* for defendant.

TOY, J. Plaintiffs bring this action to recover rental payments from defendant, their tenant, under a written lease of a four-story brick building, located at 427 Woodward avenue, in the city of Detroit. The case was tried by the court without a jury and, at its conclusion, the trial judge found for plaintiffs. From the judgment entered, defendant appeals.

The lease contained the following provision:

"It is agreed that in case the building is injured or destroyed by fire in whole or in part during the period of this lease, the parties of the first part shall forthwith repair and restore the same to a good tenantable condition, so as to be as nearly as may be substantially the same as it was prior to the time of said fire, and that the rent herein provided for shall abate entirely in case of a total destruction, until the same shall be restored to a condition so as to be occupied by the party of the second part."

The premises were occupied by defendant as a tool shop, hardware, and sporting goods store. On March 26, 1933, a fire occurred on said premises, which partially destroyed defendant's stock of mer-

chandise, and which damaged the building so that it became untenantable.

The plaintiffs through their agent, the Detroit Trust Company, had notice of the fire the day following. Their representative visited the premises that day. On April 8th, following the date of the fire, the Hyde Construction Company were employed by the trust company to clean up the premises. They employed six men and a truck to do the work. These men commenced work on Friday, April 14th, and finished removing the rubbish and debris therefrom the following Monday, April 17th.

On April 24th defendant, through his attorneys, notified plaintiffs in writing in part as follows:

"The entire premises were so destroyed by fire as to render their occupancy and use impossible without repairs; which * * * you, under the terms of that lease, were to make 'forthwith,' and in view of the fact that no repairs at all have been either made or are in progress, we do for him (defendant), elect and declare that he therefore considers this lease void and of no further force or effect and is arranging to secure another location for the carrying on of his business."

After the debris had been removed, the trust company, acting for plaintiffs, submitted specifications to several contractors of repairs needed to restore the building to tenantableness. The trust company allowed the contractors between eight and ten days to make their bids, after which the bids were opened and the contract awarded to the firm of Talbot & Meier.

On April 25th, the day after defendant had given notice of termination of tenancy, the trust company notified Talbot & Meier to commence work immedi-

ately. On May 2d, plaintiffs' attorneys notified defendant that he would be held to the lease, and would not be permitted to terminate it. Later plaintiffs notified defendant that the premises would be ready for occupancy on June 1st. The record discloses, however, that the repair job was not accepted by the trust company, acting for plaintiffs, as completed until June 27th.

The crux of this case is whether the defendant was justified in terminating his tenancy. If he was, then the judgment must be reversed; otherwise it should be affirmed.

To make decision, we must first turn to the lease. There we find a covenant imposing upon the plaintiffs the duty to "forthwith" repair the damage caused by the fire. The term "forthwith" as here used means "at once," "promptly," "without delay." The word has a relative meaning and will imply a longer or shorter period according to the nature of the thing to be done. *Dickerman* v. *Northern Trust Co.*, 176 U. S. 181 (20 Sup. Ct. 311).

In *Simmons* v. *National Live Stock Ins. Co.*, 187 Mich. 551 (Ann. Cas. 1917 D, 42), we said:

"We had occasion to consider the legal meaning of the term 'forthwith' in the case of *Walker* v. *City of Detroit*, 138 Mich. 538. We there said:

" ' The term "forthwith" does not in all cases mean "instanter," but may and often does have a relative meaning, and may mean "all reasonable celerity," or "all reasonable dispatch," "with reasonable and proper diligence." 13 Am. & Eng. Enc. Law (2d Ed.), p. 1157 *et seq.* And what is a reasonable time depends on the circumstances of each case. *Anderson* v. *Goff*, 72 Cal. 65, 73 (13 Pac. 73, 1 Am. St. Rep. 34).' "

It was the duty of the plaintiffs, therefore, in accordance with the covenant in the lease, to proceed with all reasonable celerity, dispatch, and diligence, to repair the damage and restore the prem-

ises. This they failed to do. They knew of the fire on March 27th. Their agent visited the premises on that day. Nothing was done, however, toward remedying the damage until April 8th when a contracting firm was engaged to remove the debris caused by the fire. This contractor did not commence the work until April 14th. Plaintiffs contend that this delay was caused by the action of defendant in refusing to allow the contractor upon the premises. The record does not sustain this contention.

This renovating work was completed on April 17th. The contract to repair, however, was not let by plaintiffs until April 25th—the day after notice' had been given by the defendant of his termination of tenancy.

Plaintiffs contend that this delay was occasioned because it was necessary to have the debris removed from the premises before it was possible to have specifications drawn for the purpose of making a repair contract.

We think this contention is answered by the testimony of plaintiffs' witness Hyde, a contractor, who testified:

"*Q.* Was it possible or feasible to draw specifications on those premises until the premises had been cleaned up?

"*A.* Yes."

Defendant made every effort to ascertain from the trust company, plaintiffs' agent, when the premises would be repaired, but received no information whatever from them, but on the contrary, he was confronted with every evidence of an attitude of non-interest and lethargy.

Defendant testified:

"*Q.* By the way—on the 24th of April was there any work at all in progress in this building?

"*A.* Not that I know of.

"*Q.* Did you make an examination to see?

"*A.* Yes sir.

"*Q.* Was there any work, or anybody working there?

"*A.* No sir.

"*Q.* Did you talk to Mr. Lau previous to that time, about when the job would be completed so you could get back?

"*A.* I talked with Mr. Daume. (Mr. Daume had charge of this matter for the trust company.) * * *

"*Q.* What was said at that time between you and Mr. Daume?

"*A.* I asked him what he could give me definitely as regards what he was going to do about the building. He said he couldn't answer that question, because he didn't know. * * *

"*Q.* You asked him, what did you say?

"*A.* I asked him what they were going to do about the building, when they were going to get started, and he didn't know. * * * He said he didn't know."

Defendant's witness Bray also testified:

"*Q.* Now, after this fire, did you make any inquiry from the plaintiff as to when this building would be ready for occupancy, or as to when the repairs would be started?

"*A.* As I recall, Mr. Waterston and I went over to Daume's office, and that question was asked of Mr. Daume, if he could give us any idea as to when this building would be started or when it would be finished. He replied that he could not."

We think the reasoning of the court in *Nimmo* v. *Harway*, 23 Misc. 126 (50 N. Y. Supp. 686), to be here applicable:

"The covenant in the lease imposed upon the landlord the duty of causing the damage to be repaired forthwith. 'Forthwith' means within a reasonable time or without unnecessary delay. After the landlord received notice of the fire, it was his duty to proceed with proper diligence to do whatever was necessary to remedy the injury. * * * If the tenant waited a reasonable time for him to do the work, and it was not done, the tenant might remove from the premises if he had been and was deprived of the beneficial use and enjoyment of them. *O'Gorman* v. *Harby,* 18 Misc. 228 (41 N. Y. Supp. 521). Any other construction would compel the tenant to resume possession at an unknown and undeterminable period, measured only by the pleasure of the landlord, which was evidently not the intention of the contracting parties. *Bacon* v. *Albany Perforated Wrapping Paper Co.* (McAdam, J.), 22 Misc. 592 (49 N. Y. Supp. 620). As the premises had been rendered untenantable by the fire, it was certainly a reasonable requirement, especially in view of the express language of the covenant that they should be made tenantable without unreasonable delay. Some diligence on the part of the land-lord was contemplated.

"It appears from the testimony that the fire occurred on the morning of the 20th of September, and that the same was brought to the knowledge of the landlord almost immediately; but that no repairs whatever had been done up to the 29th of September, when the tenant abandoned the premises.

"It must be said that the tenant waited a reasonable time for the landlord to commence the work of repair, in accordance with the provisions of the lease; that the landlord took no steps to repair the untenantable premises, and was in default in not performing the condition precedent with the dili-

gence and promptness required; that the tenant was deprived of the beneficial use and enjoyment of the demised premises, and was justified in moving out. * * * Had the landlord brought an action for the rent, we think the tenant could have defended as upon an eviction. See *Myers* v. *Burns,* 35 N. Y. 269; *Sparks* v. *Bassett,* 17 Jones & S. (49 N. Y. Super. Ct.) 270; 2 Taylor, Landlord & Tenant (8th Ed.), p. 381; *Tallman* v. *Murphy,* 120 N. Y. 345 (24 N. E. 716); *O'Gorman* v. *Harby, supra.''*

The judgment is reversed and the cause remanded for entry of judgment for defendant, with costs to defendant.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred. POTTER, J., took no part in this decision.